UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE OGRYZEK, ) | |
| ) | Case No. 18-cv-7668 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| WURTH BAER SUPPLY CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lawrence Ogryzek brings this employment discrimination lawsuit against his former employer defendant Wurth Baer Supply Company under the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. § 621 *et seq*. Before the Court is Wurth's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons explained below, the Court grants Wurth's motion.

**Background**

The following facts are undisputed unless otherwise noted. Wurth, an Illinois corporation, is a wholesale distributor to the woodworking industry. In 2002, Ogryzek began working for Wurth in the Midwest as an outside sales representative in its woodworking division. Wurth started a new machinery sales division in 2014 and selected Ogryzek as a machinery specialist due to his past experience in this area. As a machinery specialist, Wurth expected Ogryzek to sell large woodworking machinery to its customers and help the outside sales team find machinery leads and close on those leads. At the time the machinery division was created, Ogryzek's direct supervisor was Thomas O'Neill. In 2015, O'Neill was promoted to Executive Vice President, after which Ogryzek's direct supervisor was Daniel Janczewski.

In November 2017, Wurth acquired the company Akins Machinery to increase its machinery

sales business. Akins Machinery was a well-known and successful machinery distributor concentrating its sales in the Northeast. As a result of the acquisition, Wurth's focus on its machinery division grew along with its expectation of increased sales growth. At the time of the acquisition, Dick Akins owned Akins Machinery. Sometime in early 2018, Akins became Ogryzek's direct supervisor.

In addition to Dick Akins, the entire Akins team joined Wurth, including Akins' wife, two sons, and two additional technicians. Akins' sons worked with their father daily – Rick for five years and Dan for twelve years. Rick and Dan learned from their father how to sell machines and follow up on leads. They successfully employed Akins' techniques, methodologies, processes, and forms. After the acquisition, Wurth implemented many of Akins' methods.

On February 19, 2018, John Geraghty, Wurth's CEO, sent Ogryzek an email concerning the machinery division's transition after the Akins acquisition. Geraghty specifically discussed that there was a new structure in place and that Ogryzek needed to "course correct" by resetting his relationship with the Akins' team to become a better team player. Also, Geraghty was concerned about Ogryzek's airing "dirty laundry" to Wurth's major supplier.

A few months later, with input from Janczewski and Akins, Geraghty made the decision to terminate Ogryzek's employment due to his unsatisfactory job performance. On April 19, 2018, Geraghty and Janczewski met with Ogryzek and provided several reasons for his termination, including Ogryzek's declining sales performance, his lack of organizational skills, and the lack of confidence that Wurth's vendors and outside sales representatives had in him. On the date of his termination, Ogryzek was 61 years old.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "The principal function of summary judgment is to prevent unnecessary trials by screening out factually unsupported claims." *James v. Hale*, ___ F.3d ___, 2020 WL 2487603, at *5 (7th Cir. May 14, 2020).

**Discussion**

The ADEA protects workers who are 40 years of age and older from age-based employment discrimination. *See* 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff must ultimately establish that his age was the but-for cause of his employer's adverse employment action. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 486 (7th Cir. 2019) (en banc). At summary judgment, a plaintiff may carry this burden by presenting direct or circumstantial evidence, or, in the alternative, he may proceed under the *McDonnell Douglas* burden-shifting method of proof. *Skiba v. Illinois Central R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* [his] age." *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017) (emphasis in original).

In their briefs, the parties rely on the well-known *McDonnell Douglas* burden-shifting method of proof, which requires Ogryzek to set forth evidence that: (1) he is a member of a protected class;

3

(2) he was meeting Wurth's legitimate job expectations; (3) he suffered an adverse employment action; and (4) Wurth treated similarly situated employees who were not members of his protected class more favorably. *McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 368 (7th Cir. 2019). If Ogryzek presents sufficient evidence from which a jury could find a prima facie case of age discrimination, the burden shifts to Wurth to produce evidence of a legitimate, nondiscriminatory reason for Ogryzek's termination. *Barnes v. Board of Trs. of Univ. of Ill.,* 946 F.3d 384, 389 (7th Cir. 2020). The burden then shifts back to Ogryzek to present evidence creating a triable issue of fact that Wurth's proffered reason for his termination was pretext for age discrimination. *Id.*

Because Wurth's proffered reason for Ogryzek's termination was his failure to perform his job satisfactorily, the analysis of that prima facie element merges with the question of pretext. *See id.*; *Vaughn v. Vilsack*, 715 F.3d 1001, 1007 (7th Cir. 2013). Pretext is more than faulty reasoning or bad judgment; pretext is a lie or a phony reason. *Barnes*, 946 F.3d at 389. To establish pretext, Ogryzek must identify "weaknesses, implausibilities, inconsistencies, or contradictions" in Wurth's proffered reason that a reasonable person would find unworthy of credence. *de Lima Silva v. Department of Corr.,* 917 F.3d 546, 561 (7th Cir. 2019) (citation omitted). In this context, "the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Robertson v. Department of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020) (citations omitted).

As mentioned, Wurth explains that it terminated Ogryzek's employment because of his unsatisfactory job performance. To refute this reasoning, Ogryzek relies on his performance reviews from 2015 and 2016 where his direct supervisor Janczewski rated him as average or above average in most of the categories. The Court's inquiry, however, involves Ogryzek's job performance at the time of his termination in the spring of 2018, not during the years before the Akins acquisition. *Arrigo v. Link*, 836 F.3d 787, 796 (7th Cir. 2016). Evidence in the record shows

that after the acquisition, Wurth had adjusted its expectations to increase sales growth resulting in higher performance standards for the machinery division staff, including Ogryzek. Accordingly, Ogryzek's solid performance evaluations in 2015 and 2016 do not raise a triable issue of fact that he was performing to Wurth's new expectations at the time he was terminated in April 2018 or that Wurth's reasoning for his termination was pretext for age discrimination.

Ogryzek also points to two big sales he made in January 2018 to show that he was satisfactorily performing his job. Upon closer inspection, however, Ogryzek did not close on one of the sales. Meanwhile, that Ogryzek, along with another Wurth employee Jeff Covert, sold $170,000 worth of machinery in early 2018, standing alone, does not create a genuine issue of material fact that Ogryzek was performing to Wurth's job expectations or that Wurth's reasons for terminating his employment were phony and not worthy of credence, especially in light of Ogryzek's other shortcomings at the time of his termination in April 2018.

In addition, Ogryzek argues that a reasonable inference created by the evidence in the record is that Wurth decided to phase out its older employees, specifically Ogryzek and Harold Crisman. Crisman was a machinery specialist working out of Bloomfield Township, Michigan and his supervisor was Tom Stollmeyer, the Vice President of Sales for the Ohio Valley. In the spring of 2018, Wurth moved Crisman out of the machinery division per Akins' direction, but gave him an opportunity to work in territory sales. Thereafter, Crisman accepted a three-month guaranteed position so that he would be paid while on FMLA leave. At the end of that leave, Crisman never returned to work, but instead left his employment with Wurth. Crisman was 62 years old at that time.

In support of his argument that Wurth was phasing out its older employees, Ogryzek maintains that Akins made them turn over all of their sales leads to his sons. Similarly, Ogryzek argues that Akins required all customer quotes to go through Ann Akins, after which his sons would

5

call those customers. Ogryzek's own deposition testimony, however, establishes that Akins' sons were setting up initial interviews and helping to close on sales. Indeed, Ogryzek admitted at his deposition that he did not lose any sales commissions under this new sales method.

Ogryzek asserts additional evidence of being phased out is that Akins declined to take Ogryzek and Crisman to the annual vendor meeting in January 2018, although they had attended this meeting in the past. Akins explained that he did not take Ogryzek to the January 2018 meeting as it "would've been a waste of time" because "a day and a half dealer meeting" was not going to make "Ogryzek into a good machinery salesman." The Court would be hard-pressed to conclude that this explanation is pretext for age discrimination rather than a statement about Ogryzek was not meeting Akins' job expectations. As to Crisman, the parties do not flesh out any specific reasons or point to any evidence substantiating why he did not go to the January 2018 meeting. Based on this evidence and lack thereof, Ogryzek's argument that Wurth was phasing out its older employees is speculation, which does not defeat summary judgment. *See Johnson v. Rimmer,* 936 F.3d 695, 706 (7th Cir. 2019).

Next, Ogryzek argues that Wurth's reasons for terminating his employment were vague and shifting, thus raising an inference of intentional discrimination. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 638 (7th Cir. 2018) ("an employer's shifting factual accounts and explanations for an adverse employment decision can often support a reasonable inference that the facts are in dispute and that an employer's stated reason was not the real reason for its decision."). In particular, Ogryzek takes issue with what was discussed at his April 2018 termination meeting with Geraghty and Janczewski as compared to a checklist of his performance deficiencies Geraghty had prepared for the April 2018 meeting and Wurth's interrogatory answer about his termination. Ogryzek's attempt to parse out and then distinguish the reasons Wurth provided does not establish a vague or shifting explanation, but merely that Wurth management believed Ogryzek was not working to their

6

job expectations on several levels. For example, in his answers to the interrogatory, Wurth stated that Ogryzek lacked drive to produce and meet sales goal, failed to follow up with clients, and lacked professionalism. Wurth further noted that these were not all of these reasons for Ogryzek's termination. And, although the interrogatory answer does not mention the lack of vendor, managerial, or outside sales representative confidence, Wurth's explanation that Ogryzek lacked professionalism covers these more detailed explanations. Meanwhile, there is significant overlap in Geraghty's checklist and Wurth's other explanations for Ogryzek's discharge, including his declining sales after the Akins acquisition and lack of professionalism.

Furthermore, Ogryzek contends that Wurth's failure to put him on a Performance Improvement Plan ("PIP") before his termination is evidence of discriminatory intent. *See Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) ("Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent."). Although Ogryzek claims that Wurth typically put its employees on PIPs before their discharge, evidence in the record shows that whether Wurth puts an employee on a PIP is a case-by-case determination depending on the situation. Accordingly, that Wurth did not place Ogryzek on a PIP does not amount to an unexplained deviation from an established practice as Ogryzek suggests.

Last, Ogryzek asserts that ageist comments made by O'Neill, Janczewski, and Akins are evidence of age discrimination. "[F]or a statement to be probative of discriminatory intent, it must be 'related to the employment decision in question.'" *Deets v. Massman Const. Co.*, 811 F.3d 978, 982 (7th Cir. 2016) (citation omitted). To clarify, "that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the *decision* had a discriminatory motivation." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000) (emphasis in original). Comments, however, can raise an inference of discrimination when

they are "(1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) (citation omitted).

According to Ogryzek, his supervisor from 2014-15, Thomas O'Neill, made comments at team meetings in January or February 2017 that Ogryzek was "an old guy." Ogryzek also testified that sometime in 2017, O'Neill said to him – "What are you still doing here? I should have fired you already." Although these remarks are disparaging, there is no evidence that O'Neill's comments were made around the time of Ogryzek's termination or in reference to his termination in April 2018.

Ogryzek next turns to Janczewski's statements that he was an "old guy" from sometime in 2018. Assuming Janczewski made these comments, Ogryzek does not point to the specific timing of these statements nor whether they were made in connection to his termination. After reviewing the record, the Court could not find any such details, especially because Janczewski denied making these comments. Because it is unclear from the record that the ageist comments were proximate to Ogryzek's termination, these statements do not constitute adequate evidence that Wurth terminated Ogryzek due to his age. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006).

Further, Crisman testified that Akins told him he was "not a young guy" in reference to Crisman's travelling for work while he was ill. Crisman also testified that he was appreciative of not having to travel as much and that he believed Akins was considering his wellbeing. Crisman tells a slightly different story in his affidavit averring that on "two or three occasions after the acquisition" Akins told him, "referring to myself and Larry Ogryzek, that 'you're not some young guys to be on the road - stay within 100 miles of your home.'" (R. 68-6, Crisman 7/16/19 Aff. ¶ 10.) That Akins told Crisman (and possibly Ogryzek) that they were not young guys in relation to travelling for work two or three times after the Akins acquisition is not only vague as to timing, but these statements are

8

not related or in reference to Ogryzek's termination. *See Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) ("[S]tray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment.").

In the end, Ogryzek has not set forth sufficient evidence as to pretext, including that Wurth did not honestly believe its reasons for his discharge. Construing the evidence as a whole and all reasonable inferences in Ogryzek's favor, he has not established a triable issue of fact that Wurth's employment decision was based on his age. *See Ortiz v. Werner Enter. Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself.").

**Conclusion**

Based on the foregoing, the Court grants defendant's summary judgment motion [48]. Civil case terminated.

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 6/2/2020